**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**CLARKSBURG**

SAMANTHA JO FOLIO,

                Plaintiff,

v.

ALORICA, INC.,

                Defendant.

**CIVIL ACTION NO.: 1:22-CV-109**
**(JUDGE KLEEH)**

---

**REPORT AND RECOMMENDATION, RECOMMENDING THAT DEFENDANT**
**ALORICA, INC.'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 125] BE**
**GRANTED AND THAT PLAINTIFF SAMANTHA FOLIO'S MOTION FOR**
**SUMMARY JUDGMENT [ECF NO. 119] BE DENIED**

This matter is before the undersigned Magistrate Judge pursuant to a Referral Order [ECF No. 4] entered by the Hon. Thomas S. Kleeh, Chief United States District Judge, on October 26, 2022. Presently pending before the Court is a motion for summary judgment [ECF No. 119] filed by Plaintiff Samantha Folio ("Folio") on October 27, 2023 and a motion for summary judgment [ECF No. 125] filed by Defendant Alorica, Inc. ("Alorica") on November 17, 2023. For the reasons stated herein, the undersigned **RECOMMENDS** that Alorica's motion for summary judgement be **GRANTED** and that Folio's motion for summary judgement be **DENIED**.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Background

In September of 2021, Folio was hired as a Customer Service Representative at Alorica. She participated in a virtual training class within the first month of her employment. During the course of the training class, another trainee informed Alorica that Folio had sent her "disturbing messages through social media" that made her feel "afraid for her mental stability and [her] safety."

1

[ECF No. 125-3]. Specifically, the employee provided Alorica with copies of messages sent between that trainee and a person whose profile appeared to belong to Folio. Among other things, the messages included a photograph of a deceased bird that was allegedly sent to the employee by Folio and in Folio's possession. Further, Folio allegedly told the trainee that her "unborn child was going to die." [ECF No. 125-2, 3]. The employee tried to ignore the messages, but Folio continued to send the trainee unwanted messages, to the point that the trainee blocked Folio's number and the trainee's husband contacted law enforcement. [ECF No. 125-3].

After being informed of the above-noted allegations, Alorica suspended Folio's employment a few weeks later while it began an investigation into the text messages allegedly from Folio. [ECF No. 23-1, at 2]. Furthermore, Folio publicly posted a video[1] discussing her suspension based on the trainee's complaint. The trainee reported the video to Alorica and inquired into what can be done to ensure her safety from Folio.

Folio was employed for less than 60 days when she was terminated after the "internal investigation found that she harassed a co-worker in violation of company policy." [ECF No. 23-1, at 2]. Thereafter, on October 14, 2021, Folio filed a complaint with the EEOC claiming religious discrimination. [ECF No. 119, at 3]. In May of 2022, Folio's case was dismissed and provided a Right to Sue. [ECF No. 119-10] The case was then reopened and dismissed again. [ECF No. 119-2].

In August of 2022, Folio brought defamation suit against the trainee in Harrison County Circuit Court. [ECF No. 119-2].[2]

### B.  Procedural History

---

[1] Alorica provided the URL link to the video alleged to have been posted by Folio. The undersigned attempted to access the video, but, as of April 4, 2024, it appears that the video is no longer available.

[2] Folio lists the state court case number as 22-C-160. [ECF No. 119-2].

On October 25, 2022, Folio filed a Complaint against Alorica. [ECF No. 1]. On December 6, 2022, Folio filed an Amended Complaint with claims of religious discrimination, retaliation, defamation, and intentional infliction of emotional distress. [ECF No. 20]. On January 6, 2023, Alorica filed a motion to dismiss Counts Two and Three. [ECF No. 23]. The undersigned entered and Omnibus Report and Recommendation, recommending that the Court grant the motion to dismiss. [ECF No. 38]. On June 12, 2023, Chief Judge Kleeh adopted the Report and Recommendation. [ECF No. 42]. The remaining causes of action are Title VII religious discrimination and intentional infliction of emotional distress.

On October 27, 2023, Folio filed a Motion for Summary Judgment alleging that the messages at issue had been fabricated and Alorica ultimately made the decision to terminate Folio's employment pretextually, but that the termination was a result of Alorica's of religious discrimination. [ECF No. 119]. On November 17, 2023, Alorica filed a Motion for Summary Judgment contending that Folio's employment was terminated because of the inappropriate communications made to another trainee regardless of Folio's religious beliefs. [ECF Nos. 125, 126].

## II.    LEGAL STANDARDS

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The nonmoving party must "make a sufficient showing on an essential element of its case with respect

to which it has the burden of proof." Id. at 317–18. Summary judgment is proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non- moving party, there [being] no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

This Court has previously summarized the burden imposed on parties opposing a summary judgment challenge.

> [A]s the United States Supreme Court noted in Anderson, "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Id. at 256. "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial-whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250; see also Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979) (Summary judgment "should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." (citing Stevens v. Howard D. Johnson Co., 181 F.2d 390, 394 (4th Cir. 1950)).
>
> In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Additionally, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." Id. at 586. That is, once the movant has met its burden to show absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial. Fed. R. Civ. P. 56(c); Celotex Corp., 477 U.S. at 323–25; Anderson, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249(citations omitted).

Watson v. Warden, FCI Hazelton, Civil Action No. 2:16-CV-76, 2017 WL 1955532, at *2 (N.D.W. Va. May 11, 2017) (Bailey, J.). The Court views the evidence in the light most favorable to the respective the non-moving parties, and draws any reasonable inferences in the non-moving party's favor. See Fed. R. Civ. P. 56(a); see Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011)

(en banc). "The law is well established that uncorroborated, self-serving testimony of a plaintiff is not sufficient to create a material dispute of fact sufficient to defeat summary judgment." Diquollo v. Prosperity Mortg. Corp., 984 F.Supp.2d 563, 570 (E.D. Va. 2013) (citing Fed. R. Civ. P. 56(e), Evans v. Tech. Applications & Serv. Co., 80 F.3d 954, 962 (4th Cir. 1996)).

### III.   ANALYSIS

Folio's remaining allegations are Count One, religious-based disparate impact discrimination under Title VII; and Count Two, intentional infliction of emotional distress. Because Alorica based its decision to suspend and subsequently terminate Folio on her improper conduct, there is no genuine dispute that Alorica did not discriminate against Folio because of her religion nor is liable for intentional infliction of emotional distress.

**A.  There is no genuine dispute of material act that Alorica terminated Folio for reasons other than her religious beliefs.**

To make a prima facie case of discrimination, Folio must show that she (1) is a member of a protected class; (2) was qualified for the position; (3) suffered an adverse employment action; and (4) the circumstances of the discharge/adverse employment action "give rise to an inference of unlawful discrimination." Adams v. Trs. of Univ. of N.C.-Wilmington, 640 F.3d 550, 558 (4th Cir. 2011) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)). A plaintiff can satisfy the fourth element by showing "similarly-situated employees outside the protected class received more favorable treatment." White v. BFI Waste Servs., 375 F.3d 288, 295 (4th Cir. 2004). If a plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant to offer evidence of a "legitimate, nondiscriminatory reason" for its adverse action. McDonnell, 411 U.S. at 802.

Folio contends that Alorica has failed to "present any evidence demonstrating that Plaintiff violated company policies during her employment" and questions the legitimacy and transparency

of the evidence. [ECF No. 127, at 1]. For example, she alleges that the messages provided to Alorica by the trainee were fabricated and did not exist until after Folio's termination. [ECF No. 119, at 1].[3] In essence, Folio believes that Alorica management employees did not understand her religious beliefs; knew that she was not a Christian; and "proceeded to harass, bully, slander, defamation [sic] her character, make fraudulent evidence, discriminate and terminate the Plaintiff." [ECF No. 119, at 2].

Alorica contends that Folio's religion was not known prior to suspending her for "suspected inappropriate contact." [ECF No. 126, at 8]. It was only after learning of her suspension that Folio disclosed her religious beliefs to Alorica. [ECF No. 126, at 4]. Additionally, Alorica asserts that Folio cannot show that she was treated differently from other similarly-situated employees who fall within the protected class of religion because she admitted that sending messages like the ones at issue would be disturbing regardless of the sender's religion. [ECF No. 126, at 9]. Ultimately, Alorica contends that Folio's behavior violated their "policies designed to make employees comfortable at work" and they did not have to "tolerate this type of unwanted communications" thus warranted the termination of Folio's employment. [ECF No. 126, at 9].

It is undisputed that Folio is a member of a particular religion, American Hellenism; was qualified for the Customer Service Representative position; and suffered an adverse employment action, that being termination of employment. [ECF Nos. 119, 126]. At issue is whether Alorica's termination "give[s] rise to an inference of unlawful discrimination." The undersigned finds Folio has failed to state a prima facie case of discrimination – in that Alorica's termination resulted from the improper actions of Folio, not from a result of religious discrimination.

---

[3] It is clear from Alorica's arguments and evidence presented that Alorica was presented with the messages at issue and there is no indication that such messages were crafted for the purposes of terminating Folio.

The undersigned agrees with Alorica's contentions that Folio fails to establish that similarly-situated employees outside the protected class received more favorable treatment than she. Folio does not point to another employee who does not adhere to her religious beliefs who remained employed at Alorica after engaging in harassing-like behavior towards another employee. [ECF No. 126, at 11]; Adams, 640 F.3d at 558 (holding that a professor "did not make a showing on this record, and his arguments demand pure speculation. There is simply no direct evidence that the Defendants treated [Plaintiff] differently based on his religious beliefs.").

Folio argues that the head of the Alorica training department stated that "we do not want witchcraft here" when informing Folio of her suspension. [ECF No. 119, at 3]. Alorica "vehemently denies" this comment was made. [ECF No. 126, at 12]. However, even if the comment was made, it does not, standing alone or in context with the undisputed facts before the Court, demonstrate that Alorica made the decision to terminate Folio based on her religion. After all, Alorica was not aware of Folio's religion until after Alorica suspended Folio for the "suspected inappropriate contact." [ECF No. 126, at 8]. Furthermore, other Alorica employees were involved in the investigation after Folio's suspension that ultimately led to her termination. Id. at 13. More importantly, Folio admitted in her deposition that the mere mention of "witchcraft" does not indicate paganism, the religion that she adheres to. Id. at 12.

Although the undersigned finds that Folio has not established a prima facie case of discrimination based on religion, Alorica additionally has offered evidence of a "legitimate, nondiscriminatory reason" for terminating Folio: sending disturbing images to a peer and "violating Alorica's policies by necessarily intimidating a peer for invoking Alorica's reporting policies." [ECF No. 126, at 10]. Violating company policy satisfies this burden. See Ratcliff v. Gymboree Operations, Inc., Civ. No. 2:11-cv-00562, 2012 U.S. Dist. LEXIS 9600, *15 (S.D. W.

Va. July 11, 2012) (holding that a violation of company policy was a "clear" nondiscriminatory cause for termination). Therefore, Folio's religious discrimination claim is unsupported and overcome by Alorica's legitimate, nondiscriminatory reason for her termination: the improper and harassing nature of her conduct.

**B. There is no genuine dispute of material fact that Alorica did not cause Folio severe emotional distress.**

To prove intentional infliction of emotion distress, Plaintiff must show that (1) the wrongdoer's conduct was intentional or reckless; (2) "the conduct was outrageous and intolerable in that it offends against the generally accepted standards of decency and morality"; (3) "there was a causal connection between the wrongdoer's conduct and the emotional distress"; and (4) "the emotional distress was severe." Minshall v. Health Care & Ret. Corp. of Am., 208 W. Va. 4, 8-9 (2000).

The mere act of terminating an employee for "invidious reasons cannot be grounds for 'outrageous' conduct under West Virginia law." Councell v. Homer Laughlin China Co., 823 F. Supp. 2d 370, 384 (N.D. W. Va. 2011). For an employer's conduct to be deemed "outrageous," an employee must experience more than "embarrassment or financial loss stemming from the plaintiff's firing." Minshall, 208 W. Va. at 8. Only employers who act outrageously can be liable to their former employees. Id. Whether conduct could be considered "outrageous" is a legal question for this Court. See Duncan v. Gilead Scis., Inc., Civ. No. 3:10-1421, 2011 U.S. Dist. LEXIS 51303, FN 1 (S.D. W. Va. May 9, 2011) (quoting Hines v. Hills Dept. Stores, Inc., 454 S.E. 2d 385 (W. Va. 1994) (Cleckley, J., concurring) (finding that courts "too often" overlook that "determining whether conduct may reasonably be considered outrageous, [is] a legal question")).

Here, as Alorica rightly states, Folio must prove that (1) Alorica's conduct was intentional or reckless; (2) Alorica's conduct was outrageous and intolerable in that it offends against the

generally accepted standards of decency and morality; (3) the outrageous conduct caused emotional distress; and (4) the emotional distress was severe.

Folio alleges that after the "unlawful termination," she suffered from "[e]xtreme [e]motional [d]istress. [ECF No. 119]. She claims to be "suffering from PTSD and circular thinking as well as nightmares, and flashbacks…intense migraines," had a "nervous breakdown" because of the "harassment and bullying," filed for Social Security Disability, and had a miscarriage "due to stress inflicted by the Defendant." [ECF No. 119, at 18-9]. Further, she claims to have lost viewers and income derived from her presence on YouTube. Id. Folio has also not been able to obtain similar employment and claims that "Defendant's actions severely limited the earning potential….by causing emotional distress severe enough to seek psychological help." Id. at 19.

However, the undersigned is not convinced that Alorica's decision to suspend and subsequently terminate Folio supports a claim of intentional infliction of emotional distress. The undersigned does not find that Alorica's actions were (1) intentional or reckless nor (2) so outrageous or intolerable that it exceeds any standards of decency and thus did not cause Folio severe emotional distress. As discussed above, any reasonable review of the record demonstrates that Folio's conduct towards a fellow trainee gave rise to Alorica's decision.

Specifically, Alorica provided evidence that Folio sent inappropriate and continuous unwanted messages to the fellow trainee causing the trainee to feel unsafe and uncomfortable. Alorica persuasively argues that such behavior simply contravenes their policies pertaining to professionalism and ensuring a safe workplace environment. [ECF No. 126, at 2]. Thus, Alorica's decision was not outrageous, but rather, legitimate and warranted in response to Folio's behavior. Because the conduct was not outrageous, the undersigned also does not find that Alorica's conduct

caused Folio severe emotional distress. However, it should be noted that the undersigned does not minimize the issues Folio described having experienced during the course of events that led to the instant litigation.

In addition to contending that Folio's termination was not outrageous conduct, Alorica asserts that the claim should be barred and dismissed with prejudice because the West Virginia Workers Compensation Act affords employers with "sweeping immunity" for employers from all tort negligence claims. [ECF No. 126, at 18]; Bias v. Eastern Associated Coal Corp., 640 S.E. 2d 540, 544 (W. Va. 2006). An employer who is otherwise entitled to immunity may lose that immunity by acting with deliberate intent to cause workplace injuries. Id. "This standard requires a showing of an actual, specific intent." W.Va. Code §23-4-2.

On this point about deliberate intent and the workers compensation program, Folio alleges that her trainer, a "Christian choir singer," knew that she was "under stroke watch for high blood pressure" and hated that she told the fellow trainee about her YouTube channel and deeply held religious beliefs. [ECF No. 127, at 21]. Further, Folio believes that the trainer and fellow trainee, who began to have personal communications "outside of the company," "engaged in a collaborative effort to initiate a witch hunt and Satanic panic within Alorica." Id. As such, Folio argues that this shows deliberate intent that allows her to seek relief despite the protections afforded to Alorica through the workers compensation program.

Again, the undersigned finds these allegations to be baseless. The mere fact that two employees, one of which is alleged to be a Christian, engages in personal communications does not suggest that the two are devising a "witch hunt and Satanic panic within Alorica." Instead, it appears that Folio is speculating as to the subject of those personal communications. Thus, the

10

undersigned finds that Alorica's reliance on the workers compensation program protections is valid and should be recognized.

## V.     CONCLUSION AND RECOMMENDATIONS

Because Alorica provided a legitimate non-discriminatory reason for terminating Folio's employment, the undersigned **FINDS** there is no genuine dispute of material fact and **RECOMMENDS** that Plaintiff's Motion for Summary Judgment [ECF No. 119] be **DENIED** and Defendant's Motion for Summary Judgement [ECF No. 125] be **GRANTED**. Thus, the undersigned **RECOMMENDS** this action be **DISMISSED WITH PREJUDICE**.

Any party shall have fourteen (14) days from the date of service of this Report and Recommendation to file with the Clerk of the Court **specific written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection.** A copy of such objections should also be submitted to the presiding United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitations, consistent with LR PL P 12.

**Failure to timely file written objections to the Report and Recommendation as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk of the Court is **DIRECTED** to provide a copy of this Order to parties who appear *pro se* by certified mail, and all counsel of record, as applicable, as provided in the Administrative

Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

Respectfully submitted on April 5, 2024.

MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE